## JOHNSON v. DUNCAN.
### No. 6493.

Circuit Court of Appeals, Fifth Circuit.
Nov. 30, 1932.

1008

John Davis, of Dallas, Tex., for appellant.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

A small one-story brick store in Stamford, Tex., was included by the referee in the homestead in bankruptcy of James Elzy Duncan over the objection of his creditor, E. A. Johnson. The District Judge sustained the judgment, and we have allowed this appeal. The homestead of course depends on the laws of Texas. Section 51 of article 16 of the state Constitution is:

"The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

 Article 3833, Rev. Stats. of Texas of 1925, is in the same words. The sole objection to this homestead is that the store was not used as a place to exercise the business of Duncan at the time of his bankruptcy on August 27, 1931. The facts as found by the referee are not in dispute, and are these: The bankrupt, being the head of a family, had for more than twenty years conducted a retail grocery business in the premises in dispute. In May, 1930, he made an assignment for the benefit of creditors, excepting this store as part of his homestead. The assignee sold the stock of merchandise to J. M. Radford Grocery Company, which in turn sold it to Duncan's son. Duncan orally arranged to work for this son as a clerk, and to rent him the store in consideration of the son's paying the family bills of Duncan, amounting to about $150 per month. Duncan was, and still is, intending to re-enter business in his own name so soon as he gets a discharge in bankruptcy and can get sufficient financial backing, has never intended to abandon the premises as a business homestead, but has at all times proclaimed his intention to continue in business in said premises. On these facts there is no room for doubt that up to the time of the assignment the store was used as Duncan's place of business, and that he was at that date entitled to claim it as a homestead. It might cease to be such by an abandonment evidenced by ceasing so to use it. A cessation of use is by the very words of the Constitution not shown by a temporary renting of the homestead when no other homestead is acquired in its place. Intention to abandon is ordinarily necessary, and this is a question of fact under all the circumstances. Bowman v. Watson, 66 Tex. 295, 1 S. W. 273. In that case the court said: "This intention is not to be determined alone by his own testimony, or what he did before the levy, but may be illustrated by what has since transpired. The question is, Was it his intention to cease the use of the property as a regular place of business, or was it his temporary intention, to serve his temporary purposes, temporarily to rent it out? If the former, it was subject to appellee's levy; if the latter, it was not subject, and the sale was void. If the business was one requiring credit or capital to carry it on, as that of a merchant, the question would not be one solely of intent; or, rather, the intent would depend upon the situation of the owner. If he had neither the credit nor means of carrying on the business of merchant, he could have no definite intent to resume that sort of business." We do not think the facts in the present case show a permanent incapacity to re-enter business such as would annul Duncan's proclaimed intention. A retail grocery business can be conducted on a small scale with but little capital, and the stock to begin business is actually on hand and belonging to his son. With the aid alone of his son, Duncan can re-enter business so soon as he is discharged from bankruptcy. The terms of the present arrangement between him and the son indicate that Duncan has not severed himself from the business, but is expecting to resume it as he declares. There is in truth

hardly a renting out of the homestead, or the separation of the homesteader from its present use as a means of livelihood. The court of bankruptcy was well warranted in holding that Duncan had not at the date of bankruptcy lost his homestead right in the store.

Judgment affirmed.